Filed 3/21/25 In re A.S. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.S., <br><br> Defendant and Appellant. | A171549 <br><br> (Sonoma County <br> Super. Ct. Nos. DEP6709, <br> DEP6710, DEP6711, DEP6712) |

In this dependency proceeding involving four siblings (collectively, the Children), the juvenile court terminated the parental rights of the Children's parents, G.D. (Mother) and R.S. (Father), at a hearing under Welfare and Institutions Code section 366.26[1] and selected adoption as the permanent plan for the Children. On appeal, Father contends this court should conditionally reverse and remand for the Sonoma County Human Services Department (the Department) to provide the juvenile court with documentation pertaining to notices that were sent pursuant to the Indian

___

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and related California law, so the court can determine whether ICWA applies. The Department concedes a conditional reversal is appropriate, and we agree. We will conditionally reverse the juvenile court's order and remand for compliance with ICWA.

## I. BACKGROUND

On October 19, 2022, the Department filed a section 300 petition alleging the Children fell within the jurisdiction of the juvenile court based on the unsafe and unsanitary condition of the family home, as well as the parents' verbal arguments and alcohol abuse. The Children had been removed from parental custody and placed in foster care.

As to ICWA, the Department attached to the petition a form for each child (Judicial Council form ICWA-010(A)) stating that a social worker had spoken with the parents, and that these inquiries provided no reason to believe the child was an Indian child. But another checked box on the form states the Department "contacted the tribe(s) that the child may be affiliated with and worked with them to establish whether the child is a member or eligible for membership in the tribe(s)." The form states that information about these contacts is attached, but no additional attachments are included.

After a detention hearing on October 20, 2022, the court ordered that the Children remain out of parental custody. In a report for the hearing, the Department stated Father had reported that he is eligible to enroll in the Chumash tribe and another tribe whose name he did not know how to spell or pronounce, and that his father (the Children's paternal grandfather) had a roll number. At the detention hearing, Father completed a "parental notification of Indian status" form (Judicial Council form ICWA-020) stating he may be a member or eligible for membership in the Chumash and

2

"Seseman (Santa Cruz)" tribes (the latter of which was later clarified by a paternal aunt to be the Salinan tribe, one that is not federally recognized). Mother completed a form stating she was not aware of any Native American heritage. The minute order for the detention hearing states inquiry was made as to Indian heritage and the issue was reserved.

In a report filed in November 2022 in advance of the jurisdiction and disposition hearing, the Department outlined its efforts to obtain information about the Children's possible Indian ancestry. On October 18, 2022, a social work supervisor contacted the Santa Ynez Band of Chumash Indians and spoke to their ICWA representative, who stated it did not appear that the paternal grandfather, Father, or the Children were eligible for enrollment.

On October 26, 2022, Father's counsel provided the Department with additional information by email about the paternal grandfather, including an image of a letter from the Bureau of Indian Affairs (BIA) certifying that the paternal grandfather was enrolled as a California Indian. The certification stated that the paternal grandfather (Frederick S.) was named on the Judgment Fund Roll of California Indians with a specified enrollee number and date of birth. The letter stated Frederick S.'s "degree of Indian blood" was "3/16 Chumash/Salinan."

A few days later, Father told the Department that he is likely eligible for enrollment in the Chumash Tribe based on his father's status, but he had not pursued it and did not have an enrollment number. Father stated an uncle in Southern California might have more information, but Father did not provide contact information for the uncle despite the Department's request.

A social worker for the Department contacted the Children's paternal aunt (Father's half-sister through a shared father), who stated she has

ancestry through the Chumash and Salinan tribes. The paternal aunt stated she had an enrollment number but was unable to locate it.

As to Mother's side of the family, the Department spoke with Mother, who stated she was not aware of any Native American ancestry. When the Department asked about Mother's relatives for purposes of inquiring about possible Indian heritage, Mother provided contact information for her father.

In mid-November 2022, with the information it had gathered, the Department sent the first of two sets of ICWA notices (Judicial Council form ICWA-030) and filed them with the court. The notices were sent to the Sacramento office of the BIA; the Santa Ynez Band of Chumash Mission Indians; the Coastal Band of the Chumash Nation; and the Tejon Indian Tribe. (In a later report, the Department stated that notice was not required to be sent to the Salinan tribe because it is not federally recognized.) According to the Department's reports, after sending this set of notices, the only tribal response it received was from the Santa Ynez Band of Chumash Indians (dated either November 30, 2022 or December 9, 2022), which stated the Children were not enrolled members and were not eligible for enrollment. The record does not show that the Department provided the response or any return receipts to the court.

At the conclusion of the combined jurisdiction and disposition hearing on December 19, 2022, the juvenile court sustained the allegations of the petition and declared the Children to be dependents. The court ordered visitation and directed that reunification services be provided to Mother and Father. As to ICWA, the orders for the hearing state that there is a question under ICWA as to the paternal grandfather and that there is a reason to know the Children are Indian children. The court set a hearing for March 29, 2023 for an update on ICWA.

4

In a report for the March 29, 2023 hearing, the Department described its inquiry efforts, the notices it had sent, and the one response it received. At the hearing, the court found ICWA did not apply to the Children.

The dependency case proceeded, and consistent with the Department's recommendations, the court continued reunification services at the six-month and 12-month review hearings but directed at the 18-month hearing that reunification services be terminated and that a section 366.26 selection and implementation hearing be set.[2] In reports for these hearings, the Department stated it had no new information that would suggest ICWA might apply.

In its report for the section 366.26 hearing in October 2024, the Department recommended termination of parental rights and stated the Children were likely to be adopted by relative caretakers in Michigan (Mother's cousin and the cousin's husband), with whom the Children had been placed since June 2024. As to ICWA, the Department reported it had inquired of Mother's cousin, who stated she recalled some discussion in the family of potential heritage in the distant past, but she could not provide any further details. The Department continued its inquiries, including searching for the parents and their relatives on the Lexis/Nexis database. In August 2024 Mother refused to disclose any further information about her family and stated she knew she had no Indian ancestry.

For his part, in August 2024 Father declined to provide any information for the maternal side of his family, but he provided the name and telephone number of his paternal uncle, Freeman S. A Department social

[2] Both parents filed notices of intent to file writ petitions challenging the order setting a section 366.26 hearing, but only Mother filed a petition. (*G.D. v. Superior Court* (Sept. 3, 2024, A170745) [nonpub. opn.].) We denied the petition in September 2024. (*Ibid.*)

worker spoke with Freeman S., who stated his family had Cherokee, Chumash, and Salinan ancestry. Freeman S. provided additional information, including enrollment numbers, and referred the social worker to his sister Freida for further information. The social worker made several attempts but was unable to reach Freida or leave a message because her voicemail box was full.

On August 30, 2024, the Department sent a second set of ICWA notices with the additional information it had obtained about paternal family members. Notices were sent to the BIA; the Santa Ynez Band of Chumash Mission Indians; the Coastal Band of the Chumash Nation; the Tejon Indian Tribe; the Cherokee Nation of Oklahoma; the Eastern Band of Cherokee Indians; and the United Keetoowah Band of Cherokee Indians. The notices included the updated information the Department had obtained, including the names, tribal affiliations, and enrollment numbers of the paternal grandfather (Frederick S.), two paternal great uncles (Freeman S. and Frank S.), and a paternal great aunt (Freida S.).

As of October 1 and 3, 2024, when the social workers signed the section 366.26 report, the Department had not received any information in response to the notices that would suggest the Children were Indian children. The Department noted the court's earlier finding that ICWA did not apply and requested that the court "continue to find" that ICWA did not apply to the Children. The record does not show that the Department provided any return receipts to the court.

At the section 366.26 hearing on October 10, 2024, the court adopted the Department's recommendations, terminated Mother's and Father's parental rights, and selected adoption as the Children's permanent plan. The

6

record does not show the court made an ICWA finding after the updated ICWA notices were filed.

Father appealed the order terminating parental rights.[3]

## II. DISCUSSION

Father argues this court should conditionally reverse and remand for the Department to comply with the reporting requirements of the California statutes implementing ICWA, and for the juvenile court to determine whether ICWA applies after considering the information provided by the Department. The Department states it does not oppose a conditional reversal and remand for these purposes. We agree conditional reversal and remand are appropriate.

Under California's statutory provisions implementing and supplementing ICWA, juvenile courts and child welfare agencies have a duty to inquire of a dependent child's extended family members and others about whether the child is or may be an Indian child. (§ 224.2, subds. (a)–(c); *In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*).) If, as a result of these inquiries or other information, there is a reason to know the child is an Indian child, the agency must send notice of the dependency proceeding to the appropriate tribes. (§§ 224.2, subd. (f), 224.3, subds. (a)–(b); *Dezi C.*, at p. 1133.) In conjunction with the notice requirement, the agency generally must file with the juvenile court "[p]roof of the notice, including copies of notices sent and all return receipts and responses received." (§ 224.3, subd. (c).) The juvenile court is to consider this information in determining whether ICWA applies to the proceeding. (§ 224.2, subd. (i)(1)–(2).)

Here, the Department inquired of relatives and sent ICWA notices to tribes, but as the parties note, the record does not show that the Department

---

[3] Mother did not appeal.

7

provided the court with any return receipts or responses it received from the tribes. In its reports, the Department referred to a response it received from the Santa Ynez Band of Chumash Indians (following the first set of notices) stating the Children were not eligible for enrollment, but the Department did not attach the response. In addition, although Father does not raise this issue in his appellate brief, the Department suggests it should have made and documented efforts to contact the tribes to conduct further inquiries (outside the formal notice process) after it obtained tribal enrollment numbers for paternal family members. (See § 224.2, subd. (e)(2)(C).) Finally, the juvenile court did not make an express ICWA finding after the filing of the updated notices (which included more information than the first notices and were sent to a broader set of tribes).

On this record, we agree with the parties that, under *Dezi C.*, conditional reversal and remand are appropriate. Although *Dezi C.* focused on the inquiry phase of the ICWA process and held conditional reversal is required when an agency's initial inquiry is inadequate (*Dezi C., supra,* 16 Cal.5th at pp. 1125, 1128, 1136, 1152), the errors that occurred here (including the failure to complete the notice process by properly documenting it) have similarly resulted in an incomplete record that makes it difficult to determine whether tribal interests were adequately protected. (See *Dezi C.*, at pp. 1138–1139 [compliance with statutory inquiry and notice procedures is essential to protect the rights of Native American tribes to intervene in an appropriate case and to make tribal eligibility determinations]; *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101–1102 ["On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However,

the less developed the record, the more limited that discretion necessarily becomes."].)

For the above reasons, and in light of the Department's concession that remand is appropriate, we will conditionally reverse with directions for the Department to comply with the inquiry, notice, and documentation requirements of sections 224.2 and 224.3 and California Rules of Court, rule 5.481(a)(5).  (See *Dezi C.*, *supra*, 16 Cal.5th at p. 1136.)  If the juvenile court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  (*Dezi C.*, at pp. 1137–1138, 1152.)  If the court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions.  (*Dezi C.*, at pp. 1138, 1152.)

## III. DISPOSITION

The order terminating parental rights is conditionally reversed.  The matter is remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5), consistent with this opinion.  If the juvenile court thereafter concludes ICWA does not apply (§ 224.2, subd. (i)(1)–(2)), then the court shall reinstate the order terminating parental rights.  If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C. § 1912(a); §§ 224.2, subd. (i)(1), 224.3, 224.4.)

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

9